THE STATE OF OHIO, APPELLEE, *v.* WILKINSON, APPELLANT.

[Cite as State v. Wilkinson (1971), 26 Ohio St. 2d 185.]

(No. 70-93—Decided June 23, 1971.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Harvey R. Monck,* for appellee.

*Mr. Donald A. Modica* and *Mr. William T. Wuliger,* for appellant.

*Per Curiam.* The state's witnesses, John Raso, Timothy Raso, and Officer Watkins, at trial made in-court identifications of appellant as the man they personally observed on the night of the robbery. In addition, at trial on direct examination, each of these witnesses told of a prior out-of-court identification of Abner Wilkinson by selecting his photograph from a group of other photographs. It is the evidence of the prior out-of-court identification procedure about which appellant complains.

This court recently has had occasion to decide a case concerning an out-of-court identification procedure and its impact upon the trial of the defendant. *State* v. *Breedlove* (1971), 26 Ohio St. 2d 178. We held that under R. C. 2945.55 evidence of a prior out-of-court identification of the defendant by a photograph selection is admissible at trial if the photographs do not provide the finder of facts with the reasonable inference that defendant has had prior criminal involvement.

In this case, the photographs of Wilkinson admitted in evidence and submitted to the jurors had no identification numerals on them. We have examined these photographs and cannot find, as a matter of law, that any of them provide a basis for a reasonable inference that appellant had had prior criminal involvement.

Defense counsel's reference, on cross-examination, to

the photographs as "mug shots,"[1] first injected into the trial the suggestion that the photographs were mug shots.

John Raso and Timothy Raso identified appellant's photograph prior to the stage of the criminal procedure when his rights under the Sixth Amendment to the United States Constitution attached. Officer Watkins had known appellant some years before, and there is no evidence that his testimony regarding his having observed Wilkinson's photograph on the wall at a police station tainted the in-court identification. See *State* v. *Jackson* (1971), 26 Ohio St. 2d 74; *United States* v. *Wade* (1967), 388 U. S. 218; *Gilbert* v. *California* (1969), 388 U. S. 263.

Appellant also contends that the trial court erred in admitting the photographs in evidence without the laying of a proper foundation in that at no time was the jury informed when, how, or why the photos were taken. Although this contention is somewhat incongruous with the

---

[1]The defense on cross-examination went into the fact that three days after the robbery Officer Watkins observed a photograph of Wilkinson at the police station. In the cross-examination defense counsel used the term "mug shot" in referring to the photograph, as follows:

"Q. You did testify on direct examination when Mr. Hanna was examining you that you have known him for about 15 years, didn't you?

"A. Well, I said about 15 years.

"* * *

"Q. Now, you indicated to this court that on the 27th day of December 1966, that you saw in the police—what do they call it?

"A. A roll call.

"Q. A roll call you saw a photograph?

"A. Yes.

"Q. As best as you can remember, how large was this photograph?

"A. Well, I'd say two by four probably. Two inches by four inches.

"Q. Then it was a small photograph?

"A. Yes.

"Q. Like a mug shot?

"A. Right.

"Q. The average size mug shot?

"A. That is what is was, yes."

fact that defense counsel termed them "mug shots," the admission or rejection of photographs was in the sound discretion of the court. See *State* v. *Woodards* (1966), 6 Ohio St. 2d 14; *State* v. *Hill* (1967), 12 Ohio St. 2d 88. The state's witnesses stated that the pictures were in fact pictures of the man they saw on the night of the crime. We find no abuse of discretion.

Apparently, appellant also assigns as prejudicial error the court rulings on the admissibility of evidence of a relationship between Clarence Rolland and himself. The prosecutor obviously was attempting to produce testimony from Detective Patterson that appellant's connection with the robbery was first suggested by the fact that a check of Rolland's police file showed appellant to have been an associate of Rolland. The trial court sustained defense counsel's objections to the prosecutor's attempted elicitation of such testimony.[2] There is no need to determine whether there is evidence of a criminal conspiracy, or if one was proved. We believe the record in this regard demonstrates no prejudice to appellant.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, DUNCAN, CORRIGAN, STERN and LEACH, JJ., concur.

---

[2] The following direct testimony of Detective Patterson was elicited:

"Q. No, prior to that, sir. What I am getting at is, after the lineup that was conducted and the identification made, did you do anything or your partner do anything in your presence?

"A. Yes. After the failure to identify from slides, my partner reviewed the arrest record of Clarence Roland—

"Q. Wait a minute. Of who?

"A. Clarence Roland.

"Q. Now, after viewing that—

"Mr. Carson: Object.

"The Court: Sustained.

"The answer will go out and the jury is instructed to disregard that last answer..

"Q. Did your partner check anything in your records?

"A. Yes, he did.

"Q. Was it ascertained whether or not Roland had known anyone in this courtroom before?

"Mr. Carson: Objection.

"The Court: Sustained.

"Q. A lineup was conducted, Officer?

"A. Yes, sir.

"Q. After the lineup and the name of the person was identified and was ascertained, did your partner check anything?

"A. Yes, he did.

"Q. As a result of checking whatever he checked, what did you then do?

"A. He then obtained photographs and brought them to the robbery squad for the purpose of showing to Mr. Raso and Timothy Raso.

"Q. And Abner Wilkinson's photograph was amongst those, is that correct?

"A. That's correct.

"Mr. Hanna: Thank you."