The STATE of Ohio, Appellee,

v.

CARNEY, Appellant.

[Cite as *State v. Carney* (1990), 67 Ohio App.3d 736.]

Court of Appeals of Ohio,
Hamilton County.

No. C–890222.

Decided May 23, 1990.

*Arthur M. Ney, Jr.*, Prosecuting Attorney, and *Ron W. Springman, Jr.*, for appellee.

*Louis H. Bolce,* for appellant.

*Per Curiam.*

Defendant-appellant James Carney ("defendant") appeals from the judgment of the Hamilton County Court of Common Pleas in which he was convicted of robbery, a violation of R.C. 2911.02, and the accompanying specification that he had previously been convicted of robbery.[1] For the reasons that follow, we affirm the trial court's judgment.

---

1. Defendant was indicted in the cause *sub judice* on October 19, 1988, on seven counts. Counts 5, 6 and 7 alleged aggravated robbery, robbery and theft and were severed and tried in the proceedings below. The jury returned guilty verdicts as to the aggravated-robbery and robbery counts. However, concerning the aggravated-robbery count, the jury specifical-

The record discloses that on July 15, 1988, shortly before 11:00 a.m., Beth Martin was working as a teller at the Union Savings Bank located on Hamilton Avenue in the city of North College Hill. Martin, who was the only employee present at that time, was in conversation with a customer, Donna Thomas. Thomas testified that during the conversation she observed the defendant through the bank's windows as he stared at the bank from the sidewalk. After completing her banking transaction, Thomas passed the defendant on the sidewalk.

The record further discloses that after Thomas departed, Martin waited on a few bank customers. She was alone, however, when the defendant entered the bank. The defendant, dressed in shorts and a tee shirt, approached Martin's teller location from which she had an unobstructed view. Martin testified concerning the events that followed:

"I said may I help you. He said it's awfully hot today. And I said yes. And he said this is a robbery, he said, I have a gun. And he pulled his T-shirt close to him to show me he had a bulge in his shirt. He said give me all your money, I can blow this place up if I have to.

" * * *

"I proceeded to pull my drawer out and got all the money out. There was a $50 bill underneath a little plastic thing that when you pull it out the alarm sets off. He said give me that $100 bill, which it was actually a $50. So I pulled it off and the alarm went off." [2]

Defendant walked out of the bank after obtaining $1,500 to $1,700 from Martin. Martin testified that the foregoing events took place over one and one-half to two minutes. The record reflects that the alarm signal was received at the alarm company's central office at 10:59 a.m.

No suspect was apprehended on the date of the crimes *sub judice.* Approximately two weeks later, investigating North College Hill Detective Anthony Weber compiled a photographic array consisting of photos of thirteen possible suspects. Defendant's photo was contained within this array. The officer exhibited these photographs to Martin and Thomas. Both witnesses selected the defendant's photo as depicting the perpetrator of the crimes.

---

ly found that the defendant did not possess a firearm at the time of the offense. The trial court only sentenced the defendant on the robbery count.

The trial court dismissed count seven and its accompanying specification. The record is silent as to the disposition of the remaining counts.

**2.** There were no cameras within the bank at the time of the robbery.

Defendant was subsequently apprehended and on September 20, 1988, Officer Weber arranged a line-up of six individuals, including the defendant, for Martin to view. Martin again identified the defendant as the perpetrator of the events of July 15, 1988.

At trial, the defendant presented testimony from Priscilla Jones. She testified that on July 15, 1988, she awakened the defendant at 10:22 a.m. and drove him to work at a Kentucky Fried Chicken restaurant, arriving there at approximately 11:00 a.m. Jones stated that the defendant was dressed in his restaurant uniform. There is evidence in the record that the restaurant was 3.8 miles from the Union Savings Bank.

Defendant also presented evidence from a restaurant employee, Barbara Walker, that the defendant arrived for work at the restaurant on July 15, 1988, at approximately 11:00 a.m. Further, Carol Lamons, the restaurant's training manager, testified that she observed the defendant clock in on that day. The clocking procedure utilized by the restaurant was accomplished by the defendant entering his personal identification number into the cash register. The register recorded this entry at 11:02 a.m. on a slip of paper. The state offered the testimony of Officer Weber, who examined the restaurant's register on September 21, 1989, and found that it was five minutes slow. Additionally, there was testimony from an alarm company official who stated that the signal from the Union Savings Bank to the alarm company's receiving station took approximately one minute to arrive.

As noted above, the defendant was found guilty of robbery and he was sentenced as it appears of record. From that judgment the defendant brings this timely appeal in which he asserts five assignments of error. For his first assignment of error the defendant maintains that the trial court erred by admitting into the evidence the photo array described above, because the photograph of the defendant contained indicia of prior criminal activity. The assignment of error is not well taken.

The array was a compilation of photographs that are commonly referred to as police "mug shots." However, the photographs were masked so as to show only the head of each subject. Somewhat visible were parallel lines in the background of each subject that a trained eye might recognize as a height chart. However, from our examination of the photographs we cannot say that those lines, as a matter of law, provided the trier of fact with a reasonable basis to believe that the defendant had been involved in prior criminal activity. See *State v. Wilkerson* (1971), 26 Ohio St.2d 185, 187, 55 O.O.2d 444, 447, 271 N.E.2d 242, 244. The defendant's first assignment of error is overruled.

As his second assignment of error, the defendant asserts that he was denied effective assistance of counsel because his trial counsel failed to object to the admission of the photo array. This assignment is feckless.

We have reviewed the record and we find that, quite contrary to the defendant's assertion, defendant's trial counsel objected to the introduction of the photographs before and after they were marked. Defendant's second assignment of error is overruled.

Under his third assignment of error, defendant presents four instances in which he urges that his trial counsel denied him effective assistance. We are not persuaded.

In *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court explained:

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

Defendant first alleges an instance of ineffective assistance of counsel when his trial counsel did not file a notice of alibi. Again, defendant misstates the state of the record. Not only did trial counsel file a notice of alibi on December 8, 1989, but the defense which we have described above was also presented during trial. We perceive defendant's actual complaint to be that the jury disregarded this defense, which it was permitted to do.

Defendant next alleges that counsel "incorrectly conced[ed] that defendant had admitted the existence of essential elements of the crime, which was actually denied by defendant * * *." The specific acts or omissions forming the basis of this claim were neither briefed nor argued beyond the bare assertion quoted.

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were

outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. Accordingly, this argument is rejected.

■ Defendant next maintains that trial counsel was ineffective because he failed to vigorously pursue the Crim.R. 29 motions for acquittal. Again, we perceive no prejudice to the defendant.

Counsel made a motion for a judgment of acquittal at the conclusion of the state's case and he presented argument concerning the aggravated-robbery charge. Counsel again moved for a judgment of acquittal based upon the weight of the evidence after the verdict. These motions were denied. There may have been some merit to the defendant's motions concerning the aggravated-robbery charge.[3] We find from our review of the record, however, that the state of the evidence at the time the motions were made was such that reasonable minds could reach different conclusions as to whether each element of the remaining charges had been proven beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184.

■ Finally, defendant claims that trial counsel was ineffective for failing to vigorously pursue the inconsistencies of the identification testimony of Beth Martin and Donna Thomas during his cross-examination of them. Defendant fails, however, to cite us to such inconsistencies. We have reviewed the record and we do not find that counsel's examination of these witnesses was deficient. To the contrary, counsel skillfully obtained an admission from Martin that she did not actually see a firearm, but only a bulge under the defendant's shirt, as evidenced by the jury's verdict as to the aggravated-robbery count.

Having addressed the foregoing allegations of ineffective assistance of counsel, we find them to be meritless. The defendant's third assignment of error is overruled.

■ In his fourth and fifth assignments of error, respectively, the defendant posits that the judgment of conviction is based upon insufficient evidence and is against the manifest weight of the evidence. We shall address the assignments concurrently and, for the following reasons, we find them to be without merit.

---

3. We note that the jury returned a verdict adverse to the state on the handgun element of the aggravated-robbery charge. See *State v. Murphy* (1990), 49 Ohio St.3d 206, 551 N.E.2d 932; *State v. Gaines* (1989), 46 Ohio St.3d 65, 545 N.E.2d 68.

Defendant was found guilty of robbery, a violation of R.C. 2911.02, which provides:

"(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall use or threaten the immediate use of force against another.

"(B) Whoever violates this section is guilty of robbery, an aggravated felony of the second degree."

From our review of the record, we find that there was substantial evidence upon which the jury could reasonably conclude that all the elements of the offense of robbery had been proven beyond a reasonable doubt. *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus; *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717.

We also do not find the judgment to be against the manifest weight of the evidence. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph four of the syllabus. We have reviewed the entire record, weighed the evidence and all reasonable inferences, considered the credibility of the witnesses to the extent permissible on appeal, and determined that in resolving the conflicts in the evidence, the jury did not lose its way and create a manifest miscarriage of justice so as to require a new trial. *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652; *State v. Martin, supra.*

Accordingly, we overrule the defendant's fourth and fifth assignments of error and affirm the judgment of the trial court.

*Judgment affirmed.*

UTZ, P.J., KLUSMEIER and HILDEBRANDT, JJ., concur.