The STATE of Ohio, Appellee,

v.

TOLBERT, Appellant. ▮

[Cite as *State v. Tolbert* (1990), 70 Ohio App.3d 372.]

Court of Appeals of Ohio,
Hamilton County.

No. C–890040.

Decided Oct. 10, 1990.

*Arthur M. Ney, Jr.,* Prosecuting Attorney, and *David L. Prem,* for appellee.

*H. Fred Hoefle,* for appellant.

*Per Curiam.*

Defendant-appellant, Eric Tolbert ("defendant"), appeals from the judgment of the court below convicting him of complicity to murder, a violation of R.C. 2923.03. For the reasons which follow, the judgment of the trial court is affirmed.

During the early morning hours of August 13, 1988, the victim, Michael Hadnot, was shot four times as he and his girlfriend walked down a street in the English Woods community of Hamilton County, Ohio. Hadnot died as a result of his wounds.

The events leading to Hadnot's death apparently began several days earlier, when a dispute arose between Hadnot and one Anthony Cook over money and/or drugs owed by Hadnot to Cook. On various occasions prior to the murder, Cook visited Hadnot's residence and inquired as to his whereabouts. On one occasion, Cook instructed Hadnot's girlfriend to advise Hadnot that he was "dead."

Police detectives Joe Hoffman and Kerry Rowland testified that, during their interrogation of Tolbert, he informed them that on the evening of August 12, 1988, Anthony Cook, Clarence Carter, an individual named "Nortie" and the defendant met at Carter's apartment. After a period of time, the four men decided to leave the residence and to look for Hadnot. The men got into Tolbert's vehicle and visited various establishments in an attempt to ascertain the location of their intended victim. At approximately 3:30 on the morning of August 13, 1988, the men spotted Hadnot. The defendant stopped the automobile, and Carter armed himself with a gun and ran toward Hadnot. Various witnesses testified that Hadnot was shot as he attempted to flee from the area. While Hadnot lay wounded in the street, Carter fired two more shots into his head and neck. Carter then ran back to the waiting vehicle, which left the area at a high rate of speed.

The police, in the ensuing investigation, identified the defendant as a suspect in the case. The defendant was arrested on September 22, 1988, after providing the police with a statement regarding the events which transpired on the day of Hadnot's death.

The defendant was charged in an indictment with one count of complicity to aggravated murder that included a firearm specification. He filed a motion to suppress the statements he made to police on September 22, 1988, and a motion to suppress photographs and in-court identification testimony by various eyewitnesses. After a hearing was conducted, the trial court overruled the motion to suppress the statements and elected to defer any ruling on the photographic evidence and the identification testimony until the trial had begun and until Derek Harper had taken the stand. In the course of the trial, then, the court ruled against the defendant on the remaining suppression issues, and Harper was permitted to identify the defendant as the driver of the "getaway" vehicle.

At the conclusion of the trial, the jury acquitted the defendant of the charged offense and the firearm specification, but found him guilty of the lesser included offense of complicity to murder. He was sentenced as appears of record.

In his first assignment of error, the defendant alleges the trial court committed plain error by permitting the prosecution to adduce evidence that Clarence Carter, a codefendant, had been convicted of aggravated murder in an earlier trial. This assignment is without merit.

Crim.R. 52(B) states:

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

In construing this rule, the Ohio Supreme Court in *State v. Long* (1978), 53 Ohio St.2d 91, 97, 7 O.O.3d 178, 181, 372 N.E.2d 804, 808, held that "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."

The record in the instant case reveals the following colloquy between the prosecutor and the defendant regarding the codefendant's conviction:

"Q. O.K. But he was killed between 3:30 and 4. And you don't want to say now you were with Clarence Carter; is that right?

"A. I wasn't with him.

"Q. Because we know Clarence Carter killed him between 3:30 and 4, don't we?

"A.  No, I don't know.

"Q.  Well, he's been convicted of it, hasn't he?

"A.  Yes."

Although we hold that the above question was improper, we do not agree that it amounts to plain error.  In light of the other evidence presented at trial, including testimony from a witness who identified the defendant as the driver of the "getaway" vehicle, and the defendant's statements to the police, we cannot say that the question asked by the prosecutor affected a substantial right of the defendant or that a manifest miscarriage of justice occurred.  The defendant's first assignment of error is, therefore, overruled.

In his second assignment of error, the defendant alleges the trial court erred when it permitted the prosecution to adduce evidence of the defendant's prior criminal acts.  The defendant argues that the trial court improperly allowed the state, during cross-examination, to reveal to the jury that the defendant's driver's license was suspended and that he was on probation.  This assignment is not well taken.

The transcript of the proceedings below reveals the following exchange between the prosecutor and the defendant:

"Q.  Did you say something to one of the officers about you weren't supposed to be driving back on August 13th?

"A.  That's correct.

"Q.  Why weren't you supposed to be driving back on August 13th?

"MR. UHLE:  Objection.  I don't see the relevancy of this line of questioning, either.

"THE COURT:  Overruled.

"THE WITNESS:  Would you repeat the question?

"BY MR. CROWE:

"Q.  Sure, Why did you tell the officers that you weren't supposed to be driving back on August 13th?

"A.  Because I don't have a valid driver's license.  My license is suspended right now."

In further testimony concerning the use of his automobile, the defendant stated:

"I didn't normally loan it out, no, but when I did have the car, I had other people drive for me because I knew I wasn't allowed to drive.  And if I was to get caught driving, it would violate my probation."

Evid.R. 103 indicates that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected * * *."

Although the prosecution's questions concerning the suspension of the defendant's driver's license may have been violative of Evid.R. 404(B), we cannot say, based on the state of the record, that such questions affected a substantial right of the defendant, particularly in light of the evidence produced at trial which established the defendant's guilt.

In addition, it is clear that the defendant volunteered the information regarding his probation and that the prosecutor did nothing to prompt the response. See, generally, *State v. Wright* (June 12, 1985), Hamilton App. No. C–840669, unreported, 1985 WL 8874. Accordingly, the defendant's second assignment of error is overruled.

In his third assignment of error, the defendant alleges the trial court erred in entering a judgment of conviction since the prosecutor, after the defendant's objection had been sustained, informed the jury that the state was willing to enter into a plea bargain with the defendant. This assignment is without merit.

During the state's cross-examination of the defendant, the prosecution broached the topic of previous plea negotiations apparently entered into by the defendant prior to trial. The discussion included the following:

"Q. Well, let's talk about that for a moment. You did get a lower bond because you had originally agreed that you were going to testify against Anthony Cook and it was only after your lawyer became involved that we were able to give you a sweet enough deal.

"MR. UHLE: Objection, your Honor. I don't think we're going to go into all the facts and circumstances.

"THE COURT: Sustained.

"MR. CROWE: It was something he had brought out. I just felt if he wanted to put it before these people they had a right to know, yeah, we would have made a deal with this man.

"THE COURT: Let's go on. Next question.

"MR. CROWE: No additional questions."

It is evident from our review of the transcript of the proceedings that the trial court sustained the defendant's objection to the prosecutor's question. Later, the trial court informed the jury that it was to disregard those questions, and any inferences arising from them, which were objected to by the opposing party and which were sustained by the judge.

In addition, although the prosecutor's comment, following the trial court's ruling to sustain the defendant's objection, was ill advised, we do not agree that the defendant was materially prejudiced, particularly since the defendant had commented earlier regarding the state's decision to lower his bond. (The defendant implied that because his bond was lowered, he must have been innocent.) The defendant's third assignment of error is overruled.

The defendant alleges in his fourth assignment of error that the trial court committed plain error in permitting the prosecution to attack defense counsel and in permitting the prosecutor to imply during the trial and final argument that the alibi proffered by the defense was a fraud concocted by the defendant and his counsel. This assignment is without merit.

Upon review of the record, we conclude that the prosecution did not "attack" the defense counsel to the extent that it constituted plain error. The prosecution merely sought to determine when defense counsel became aware of the defendant's alibi. However, the prosecution's statements concerning the filing and merit of the defendant's alibi are a different matter.

We note, initially, that the defendant filed his notice of alibi on December 2, 1988, and that his trial began on December 12, 1988.[1] Thus, he complied with Crim.R. 12.1, which required him to file his notice of alibi at least seven days prior to trial.

In any event, the transcript of the proceedings reveals numerous statements by the prosecutor which imply that the defendant's alibi must have been fabricated because it was not filed until ten days prior to the commencement of trial. This is evidenced in the following exchange between the prosecutor and the defendant during cross-examination:

"Q. Is that the alibi you were talking about with Mr. Uhle?

"A. Uh-huh, yes, it is.

"Q. O.K. And do you see the date up here that this was filed and the date that it's been certified that it was delivered to our office?

"A. Yes, I see it.

"Q. What date is that, sir?

"A. December 2nd.

"Q. December 2nd. That's just been a short time ago, hasn't it?

---

1. The state's argument that the entry dated October 20, 1988, demonstrates that trial was originally set to commence on December 7, 1988, is erroneous since that entry clearly indicates that the defendant's case was set for report on December 7, 1988, and not for trial.

"A.  I've told—I told him before that.  I told him as soon as I got in contact with him where I was at.

"Q.  Who?

"A.  My lawyer.

"Q.  You mean your lawyer has known all the way since back in September that that is where you were, but yet you decided not to file your alibi or let us know where you supposedly were until December 2nd, sir?

"A.  Because he couldn't get in contact with Andre Smith.

"Q.  I see.  You hadn't had a chance to get Andre Smith coached as to what he was supposed to say.  Is that correct, sir?

"A.  No, that's not correct."

Later, during final argument, the prosecutor argued:

"So he came up with this alibi.  He filed this alibi.  He never told them anything about the alibi in his oral statement.  You didn't hear anything about any alibi on the tape when he says that he was there, that he was just repeating the words that the officers told him."

In *State v. Sims* (1983), 3 Ohio App.3d 331, 3 OBR 385, 445 N.E.2d 245, the court held that when, as here, the notice of alibi has been timely filed, it is error for the trial court to permit the prosecutor to adduce evidence of the date that defendant filed the notice of alibi.  The court reasoned that failure to file the notice of alibi promptly is not probative of guilt because, under Crim.R. 12.1, such a notice need not be filed until seven days before trial.

We conclude, after reviewing the record in the instant case, that the trial court did indeed commit error in permitting the prosecutor to adduce evidence concerning the date the defendant filed his notice of alibi.  However, we are not convinced that this constituted plain error.  Our decision is based primarily on the overwhelming evidence presented by the prosecution to prove the defendant's guilt beyond a reasonable doubt.  This evidence included the testimony of Derek Harper, who insisted that the defendant was the driver of the automobile which sped away from the murder scene; the defendant's taped confession; and the testimony of Officers Hoffman and Rowland detailing the incriminating statements made to them by the defendant.

Accordingly, we cannot say that the actions of the prosecutor affected a substantial right of the defendant or that a manifest miscarriage of justice occurred.  The defendant's fourth assignment of error is overruled.

■  In his fifth assignment of error, the defendant alleges the trial court committed plain error in permitting the prosecution, in opening statement, to vilify the defendant and to argue for conviction because the defendant and his

separately tried codefendants were bad people. This assignment is without merit.

The test to be applied in reviewing opening statements is set forth in paragraph two of the syllabus in *Maggio v. Cleveland* (1949), 151 Ohio St. 136, 38 O.O. 578, 84 N.E.2d 912, which states:

"Counsel should be accorded latitude by the trial court in making his opening statement, but when he deliberately attempts to influence and sway the jury by a recital of matters foreign to the case, which matters he knows or ought to know cannot be shown by competent or admissible evidence, or when he makes a statement through accident, inadvertence or misconception which is improper and patently harmful to the opposing side, it may constitute the basis for ordering a new trial or for the reversal by a reviewing court of a judgment favorable to the party represented by such counsel."

See, also, *State v. Wagner* (May 17, 1988), Scioto App. No. 1662, unreported, 1988 WL 50518.

In the instant case, the prosecutor, in his opening statement, referred to the defendant and his codefendants as "bad people," "drug dealers," "executioners," "thugs" and "sharks." It is our opinion that the prosecutor did not deliberately attempt to influence the jury and did not recite matters which could not be demonstrated by competent and admissible evidence. In addition, although we find the remarks above to be somewhat extreme, we are not convinced that they were improper or that they were patently harmful to the defendant, particularly since the trial court correctly instructed the jury that the opening statement did not constitute evidence. We conclude, therefore, that a substantial right of the defendant was not affected and that no manifest miscarriage of justice occurred.

In his sixth assignment of error, the defendant alleges the trial court committed plain error in permitting the prosecutor, during cross-examination of the defendant, to utilize purported notes taken by one of the police officers who initially interviewed the defendant. The defendant argues that no foundation was laid to establish that the notes used in cross-examination were the same notes taken by the officer; that the notes were taken contemporaneously with the interview; that the notes accurately reflected what was said during the interview; or that the notes used to cross-examine the defendant were the same notes used by the police officer during his testimony. This assignment is without merit.

Evid.R. 613(A) is applicable here and states in pertinent part that:

"In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents

disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel."

The examining counsel, therefore, is not required to produce the prior statement or disclose its contents to the witness at the time of his interrogation. *State v. Talbert* (1986), 33 Ohio App.3d 282, 515 N.E.2d 968. It is clear, however, that opposing counsel is entitled to see the statement or be made aware of its contents if he so requests. *Talbert, supra.* Further, Evid.R. 611(B) allows for cross-examination on "all relevant matters and matters affecting credibility." *State v. Minor* (1988), 47 Ohio App.3d 22, 546 N.E.2d 1343.

■ Certainly, in the case *sub judice,* the prosecutor was entitled to use the police officer's notes when he cross-examined the defendant concerning statements he had allegedly made to the police since, during direct examination, the defendant testified that many of his responses to the police officer's questions were the result of intimidation and coercion.

In addition, a proper foundation for the introduction of the police officer's notes into evidence, which may include the time, place and person involved in the supposedly contradictory statements, was not necessary in this case (although the record reveals that a proper foundation was laid for the introduction of the notes) because the state chose not to offer the notes into evidence. *Talbert, supra,* 33 Ohio App.3d at 284, 515 N.E.2d at 971.

Since we find no error on the part of the trial court affecting a substantial right of the defendant, the defendant's sixth assignment of error is overruled.

In his seventh assignment of error, the defendant alleges he was denied his right to the effective assistance of counsel. In support of this assignment, the defendant argues that trial counsel erred in:

"(1) Adducing hearsay testimony by a police officer-witness that appellant was the driver of the car involved in the homicide, according to two witnesses who did not testify;

"(2) Securing from the officer the statement that police investigation had found that appellant was involved in drug use or drug running, crimes for which appellant had never been charged, much less convicted; and

"(3) Incorrectly conceding that appellant had admitted the existence of essential elements of the crime, which was actually denied by appellant."

This assignment is without merit.

Review of a claim of ineffective assistance of counsel is essentially a two-step process under *State v. Nabzony* (1978), 54 Ohio St.2d 195, 213, 8 O.O.3d 181, 191, 375 N.E.2d 784, 796, which states:

"There must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, * * * there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness."

To illustrate that the attorney substantially violated his essential duties to the client, the defendant must overcome the presumption that the attorney's actions were sound trial strategy. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

In the instant case, the defendant first claims that his trial counsel was ineffective in adducing testimony from a police officer that three witnesses identified the defendant as the driver of the "getaway" vehicle, when, in fact, only one of the witnesses eventually testified at trial. The defendant argues that because Quinton Ware and Tony Harper did not testify, his trial counsel should not have propounded questions to the officer concerning their identification of the driver.

It is apparent, after reviewing the transcript of the proceedings, that trial counsel probed into the area of the defendant's identification for purposes of clarification in an attempt to determine what each witness had told the police. The defendant insists that his that his trial counsel should not have mentioned Quinton Ware because he did not appear and did not testify. However, at the time defendant's trial counsel was cross-examining the police officer, Ware had been subpoenaed and was expected to testify. In addition, the defendant suffered no prejudice from his trial counsel's questions involving Tony Harper since the jury was informed that Harper had recanted his statements identifying the defendant as the driver of the vehicle.

The defendant next argues that his trial counsel was ineffective in securing testimony from the police officer that the defendant was a drug user or a drug runner. We find no merit in this claim since the defendant candidly admitted in his taped confession and during direct examination that he used marijuana.

The defendant further claims that his trial counsel was ineffective in incorrectly conceding, during closing argument, that the defendant knew of his codefendants' intention to kill Hadnot.

It is clear after reviewing counsel's statements that he was attempting to demonstrate that the statements made by the defendant, during his taped interview with the police, were not made voluntarily, but rather were the product of coercion. It is evident, though, that counsel's reiteration of the defendant's statement was not entirely accurate. However, the defendant

was not prejudiced by his counsel's misstatement since the jury was instructed that closing argument did not constitute evidence. Furthermore, the defendant's confession was heard by and was available to the jury. There is no evidence in the record to suggest that the jury did not properly consider its evidentiary value. The defendant's seventh assignment of error is, therefore, overruled.

In his eighth assignment of error, the defendant alleges that his trial counsel was ineffective because he was not present during the deliberations of the jury. The defendant argues that because of trial counsel's absence, the testimony of Officer Hoffman was not read to the jury. This assignment is not well taken.

The record reveals that the jury, during its deliberations, requested the court to read back the testimony of Officer Rowland. At the time, defendant's trial counsel, Mr. Uhle, was not available, but his associate, Mr. Temming, was present and objected to the reading of Rowland's testimony. The defendant argues that, had Uhle been present, he would have requested that the testimony of Hoffman also be read to the jury.

First of all, this argument is speculative since there is no indication in this record of what action Uhle would have taken had he been in the courtroom at the time. More importantly, the record reveals that the jury did not request that Hoffman's testimony be read back, and there is no evidence to suggest that the jury was uncertain or unaware of the nature of Hoffman's testimony.

Accordingly, the eighth assignment is overruled because the record does not reveal that there was a substantial violation of defense counsel's essential duties to the defendant or that the defendant was prejudiced as a result of his counsel's actions. *State v. Bradley* (1989), 42 Ohio St.3d 136, 141, 538 N.E.2d 373, 379.

In his ninth assignment of error, the defendant alleges the trial court erred in permitting the deliberating jury to hear, over objection, the testimony of Officer Rowland. The defendant argues that this gave the jury an incomplete and one-sided version of what occurred during the police interrogation of the defendant. This assignment is without merit.

"A trial court may, in the exercise of discretion, cause all or part of the testimony of a witness to be read back to the jury upon request." *State v. Crossty* (Mar. 4, 1987), Hamilton App. No. C–860297, unreported, 1987 WL 7419. Abuse of discretion is more than an error of law or judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court. *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144.

In the case *sub judice,* we are not convinced that the trial court abused its discretion. The record merely reveals that the trial court reread a portion of Rowland's testimony. Contrary to the assertions of the defendant, it cannot be said that this testimony was overemphasized since this was the only testimony which the jury requested to rehear. Accordingly, this ninth assignment is overruled.

In his tenth assignment of error, the defendant alleges the trial court committed plain error in failing to read Officer Hoffman's testimony to the jury.

This assignment is overruled because the jury did not request to rehear the testimony of Officer Hoffman, and we cannot say, based on the state of the record, that the jury was unable to recall accurately the details of his testimony.

The defendant's eleventh and twelfth assignments of error raise similar issues, and we choose, therefore, to address them together. The defendant alleges in these assignments that he was deprived of the effective assistance of counsel and of a fair trial because his trial counsel failed to object, to move for mistrial, or to take other action to prevent prejudice in response to prosecutorial misconduct and to the admission of prejudicial, inadmissible evidence. The defendant, in support of these assignments, focuses upon matters which were argued in his first, fourth, fifth and sixth assignments of error. This assignment is not well taken.

The test for determining the ineffectiveness of counsel was set forth earlier in this decision and need not be repeated here. It must be noted, however, that in order for the defendant to demonstrate prejudice, he must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington* (1984), 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698. After reviewing the record, we are not persuaded that the defendant has met this burden.

The record does reveal that, at various instances during the trial, defense counsel should have objected to actions or questions by the prosecution. However, after reviewing the proceedings in their entirety, we are not convinced that but for trial counsel's actions or inaction, the result of the proceeding would have been different. The prosecution offered substantial evidence which established the defendant's guilt. We hold, therefore, that trial counsel's representation of the defendant was adequate and effective; that the defendant suffered no prejudice as a result of counsel's representation; and that, based on our review of the record, the defendant was indeed afforded a fair trial.

We couple our discussion of the thirteenth and fourteenth assignments of error because they present another set of similar issues. The defendant initially alleges that the trial court committed plain error in permitting a photographic array (which the state utilized to determine if Derek Harper could identify the defendant) to be introduced into evidence and to be reviewed by the jury since the photograph of the defendant contained indicia of prior criminal activity. We disagree.

In *State v. Breedlove* (1971), 26 Ohio St.2d 178, 55 O.O.2d 441, 271 N.E.2d 238, the Supreme Court held that, pursuant to R.C. 2945.55, evidence of a prior out-of-court identification of the defendant from a photographic array is admissible at trial if the photographs do not provide the trier of facts with the reasonable inference that the defendant has had prior criminal involvement.

In the case *sub judice*, unlike in *Breedlove*, the police identification numerals on each photograph were obscured by means of a folder so that a witness could only review the faces of the men. We acknowledge that horizontal "height" lines appeared in the background of each photograph, but we are not persuaded that these lines, alone, provide a basis for a reasonable inference that the defendant had had prior criminal involvement. *State v. Wilkinson* (1971), 26 Ohio St.2d 185, 55 O.O.2d 444, 271 N.E.2d 242; *State v. Jackson* (May 12, 1983), Cuyahoga App. No. 44400, unreported, 1983 WL 2994. Thus, the trial court did not commit plain error in admitting the photographs into evidence.

The defendant also alleges that he was denied the effective assistance of counsel because his trial attorney failed to object to the admission of the photographic array into evidence. We find no merit in this claim since it is apparent that the defendant's photograph did not reflect that he had had prior criminal contacts with the police. Our review of the record, with respect to the admission of the photo array into evidence, does not reveal that there was a substantial violation of defense counsel's essential duties to the defendant or that the defendant was prejudiced as a result of his counsel's actions. *State v. Bradley* (1989), 42 Ohio St.3d 136, 141, 538 N.E.2d 373, 379. Accordingly, the defendant's thirteenth and fourteenth assignments of error are overruled.

In his fifteenth assignment of error, the defendant alleges the trial court erred in overruling his motion to suppress statements made to the police. The defendant argues that, as a result of the police officers' coercive and intimidating tactics, his incriminating statements were made under duress. This assignment is overruled.

Where, as here, a suppression hearing is conducted by the trial court to determine the voluntariness of the defendant's statements, the court must examine the totality of the circumstances. *State v. DePew* (1988), 38

Ohio St.3d 275, 528 N.E.2d 542. Upon review of the trial court's ruling, the appellate court must bear in mind that the weight of the evidence and the credibility of witnesses are primarily for the trier of fact. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583.

In consideration of the foregoing, we conclude, after reviewing the transcript of the suppression hearing in this case, that the police advised the defendant of his *Miranda* rights, and that the defendant read and signed the notification-of-rights form while stating that he understood its significance. Accordingly, on the state of this record, which included the credible testimony of Officer Hoffman, we conclude that there is ample evidence to support the ruling of the trial court that the statements of the defendant were knowingly, intelligently and voluntarily made.

In his sixteenth assignment of error, the defendant alleges the trial court erred in failing to rule upon his motion to suppress the identification testimony of two eyewitnesses prior to trial and in denying the motion after a mid-trial hearing. This assignment is overruled.

Crim.R. 12(E) provides that:

"A motion made before trial other than a motion for change of venue, shall be timely determined before trial. Where factual issues are involved in determining a motion, the court shall state its essential findings on the record."

The failure to rule upon a pretrial motion prior to trial constitutes error. *State v. Jones* (Sept. 22, 1983), Cuyahoga App. No. 45135, unreported, 1983 WL 4745; *State v. Nickleberry* (Oct. 28, 1982), Cuyahoga App. No. 44387, unreported, 1982 WL 5990. This error, however, is harmless unless it adversely affects the substantial rights of the defendant. *State v. Mathis* (Oct. 31, 1985), Cuyahoga App. No. 49640, unreported, 1985 WL 8529.

In the case *sub judice*, the trial court erred when it failed to rule upon the defendant's pretrial motion to suppress identification testimony until trial had begun and various witnesses had taken the stand. A key inquiry, therefore, is whether the trial court's error affected a substantial right of the defendant.

The record reveals that the trial court deferred a ruling on the motion because neither of the witnesses was available at the suppression hearing. Thus, the trial court essentially had no evidence before it upon which to render a decision in advance of the trial. Later, during trial, Derek Harper

appeared[2] and took the stand. After various preliminary questions, the jury was excused and the trial court resumed the suppression hearing. The defendant was afforded the opportunity to examine Harper and to probe into various aspects of his testimony. The trial court subsequently found Harper to be a credible witness and overruled the defendant's motion to suppress. When the trial resumed, Harper identified the defendant as the driver of the "getaway" vehicle.

Based on the foregoing, we conclude that no substantial right of the defendant was affected by the trial court's decision to postpone its ruling on the motion to suppress. Thus, we find any error to be harmless.

The defendant also alleges that the trial court erred when it did eventually overrule his motion to suppress. The defendant argues that the evidence adduced during the hearing on the motion did not establish that Harper's identification testimony was reliable. This argument is not well taken.

"[R]eliability is the linchpin in determining the admissibility of identification testimony * * *." *Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154. In *Neil v. Biggers* (1972), 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411, the United States Supreme Court set forth several factors bearing upon the likelihood of misidentification:

"[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

In the case *sub judice*, Harper was near the scene when the murder occurred. Further, he testified that he was able to get a good look at the face of the driver of the vehicle when it passed under a street lamp. A review of the transcript of the hearing reveals that although Harper did not provide police with a detailed description of the defendant, he was certain that the defendant was the driver of the vehicle which departed from the scene after Hadnot had been murdered. In addition, it appears from the record that Harper viewed the photographic array approximately two weeks subsequent to the murder.

Based upon the factors above and our examination of the totality of the circumstances, we conclude that the defendant failed to demonstrate that Harper's identification testimony was unreliable, or that it was the product of suggestive police procedures. The defendant's sixteenth assignment of error is, therefore, overruled.

---

2. The other witness material to the motion to suppress, Quinton Ware, never appeared at trial.

The defendant's seventeenth and eighteenth assignments of error may be addressed together. In these assignments, the defendant alleges that the evidence adduced at trial was insufficient to sustain his conviction for complicity to murder, and that the conviction was contrary to the manifest weight of the evidence. We disagree.

Due process requires " * * * that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof * * *." *Jackson v. Virginia* (1979), 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560, 571. "A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus. Furthermore, when reviewing a claim that a judgment (in a criminal case) was against the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717.

In the case *sub judice*, the testimony of Officers Hoffman and Rowland, as well as the taped statement of the defendant, established that on the evening of August 12, 1988, the defendant, along with several other persons, cruised through the community of English Woods with the intention of locating and killing Michael Hadnot. Unfortunately, in the early morning hours of August 13, the men succeeded in attaining their sadistic goal. The deed, however, did not go unnoticed. As the "getaway" vehicle sped away and passed under a street lamp, Derek Harper was able to view the face of the driver. Later he identified the defendant as the man he had seen driving the vehicle the night of Hadnot's death. In addition, an automobile owned by the defendant and seized by police was subsequently identified by Harper as the vehicle he had seen the defendant driving the night of the murder.

Based on all the evidence in the record, we conclude that there was substantial evidence upon which a jury could reasonably conclude that all the elements of the offense of complicity to murder were proved beyond a reasonable doubt. Accordingly, we hold that the jury did not lose its way and create such a manifest miscarriage of justice that the conviction must be reversed.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

Utz, P.J., Doan and Klusmeier, JJ., concur.