JUDGMENT ENTRY
This appeal is considered on the accelerated calendar under App. R. 11.1(E) and Loc. R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct. R.Rep.Op. 3(A).
In a single assignment of error, defendant-appellant Mario Williams appeals the trial court's judgment convicting him of two counts of aggravated robbery in violation of R.C. 2911.01(A)(1), two counts of robbery in violation of R.C. 2911.02(A)(2), and accompanying firearm specifications. For the following reasons, we affirm.
On March 17, 2003, at approximately 11:35 p.m., Stevonne Spivery and George Tubbs were talking in front of Spivery's home when several men in a white car pulled up beside them. Two men got out of the car and approached the couple. One of the men, described by the victims as the "tall and skinny one" with braids, pointed a gun at Tubbs, while the other man, later identified as Williams, pointed a gun at Spivery and told her to "get the fuck on the ground." In response, Spivery began to back away from Williams. Facing Williams, she almost walked across the street before she went to the ground face-down. At that point, Williams searched her jacket and took her cellular phone. Williams eventually left with his accomplice in Tubbs's car.
At the scene, a police officer obtained descriptions of the suspects from Tubbs and Spivery. They described the suspect who approached Tubbs as a black male wearing a hat, about 6 feet tall and 170 pounds. The suspect who approached Spivery, later identified as Williams, was described as a shorter, heavier black man, approximately five feet eight-inches, and 200 pounds, wearing a dark jacket that had some color on it. Spivery testified that as she was walking backward facing Williams, she made eye contact with him and had a full view of his face. She testified that he was only five feet from her, and that there was enough light emanating from two street poles and the nearby church parking lot to see Williams's face.
On March 18, 2003, police officers arrested Williams for the robberies after spotting him driving Tubbs's stolen car. He initially fled from the police, but they were able to apprehend him after a short car chase. Two days after the robberies, Spivery identified Williams from a photograph lineup presented to her. She testified that the detective showing her the pictures told her to look over the two composites and to determine whether she recognized anyone as the person who had robbed her and Tubbs. She identified Williams. A jury trial followed, and Williams was convicted and sentenced accordingly. Williams now appeals.
In a single assignment of error, Williams maintains that the trial court erred in convicting him of the crimes charged following an unfair jury trial that violated his due-process rights. Under this assignment, Williams argues that he was denied the effective assistance of counsel in violation of the Sixth Amendment, and he also contests the sufficiency and weight of the evidence underlying his convictions.
With respect to Williams's claim of ineffective assistance of counsel, he asserts errors in the following respects: defense counsel's failure to move to suppress evidence of an eyewitness identification; defense counsel's admission to the jury that this was his first jury trial; defense counsel's failure to object to the admission of photographs of the defendant containing height bars in the background, as well as other prejudicial evidence.
In order to establish ineffective assistance of counsel, Williams must show that his trial counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's performance.[1] We note that the burden is on Williams to prove the ineffectiveness of his counsel in light of the Ohio Supreme Court's holding that a properly licensed attorney is presumed to be competent.[2]
Williams claims that defense counsel should have moved to suppress Spivery's eyewitness identification because it was tainted by improper police procedure. Williams maintains that it was improper for Detective Chris Bihl to tell Spivery that the police might have had a suspect involved in the robbery before she viewed the two photo arrays. But after reviewing the record, we hold that even if defense counsel should have filed a motion to suppress the identification testimony, it did not constitute ineffective assistance because Williams was not prejudiced by this failure.
To warrant suppression of identification testimony, the accused bears the burden of showing that the identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" and that the identification itself was unreliable under the totality of the circumstances.[3] Thus, even if a pretrial identification is impermissibly suggestive, an in-court identification is permissible where the prosecution establishes by clear and convincing evidence that the witness had a reliable independent source based on prior independent observations made at the scene of the crime.[4] Here, Spivery's identification was reliable. She had at least one minute to view Williams's face in a lighted area at a close range. Her description of Williams's actual height, weight, coloring and hair was a fair approximation, and she identified him immediately from a photo array within two days after the robbery. Further, on the day he was arrested, Williams was wearing the coat that Spivery had described.
Next, Williams says that it was improper for defense counsel to inform the jury that this was his first jury trial. We hold that the conduct did not fall below a reasonable standard of representation. It can simply be viewed as a trial tactic to persuade the jury to have some leniency toward the defendant.
Williams also argues that his defense counsel failed to object to the admission of the photo arrays that contained height markers indicating some type of previous criminal activity. Even if defense counsel should have objected, we hold that Williams suffered no prejudice from this failure. Williams testified at trial that he had previous criminal convictions. Further, it is apparent from the record that the photograph of Williams was taken the day of his arrest for the subject robberies, and that was understood by the jury. Thus, the photos did not necessarily imply that Williams had a criminal history.[5]
Finally, Williams maintains that defense counsel's failure to object to the introduction of hearsay testimony and the leading of witnesses by the state, as well as defense counsel's questioning of Williams about his criminal history, was prejudicial in light of the fact that the state's two key witnesses, Spivery and Tubbs, contradicted each other's testimony. Williams argues that Spivery made an in-court identification of him, but that Tubbs testified that Williams was not one of the perpetrators. But Williams misconstrues Tubbs's testimony. Tubbs did not testify that Williams was not one of the robbers, but merely indicated that he was unable to be certain that Williams was one of the robbers. Thus, Tubbs did not say that Williams was not the robber. In fact, it is reasonable that Tubbs could not identify Williams in court as one of the robbers because during the crime Williams was facing Spivery and not Tubbs. Tubbs was preoccupied with the other robber, who had stolen his car and pistol-whipped him. Because we are not persuaded that Williams was prejudiced by any of defense counsel's actions or lack thereof, we hold that Williams has not met his burden of proving that there was a reasonable probability that the result of his trial would have been different but for the actions of his counsel.
Under this assignment of error, Williams also contests the sufficiency and the weight of the evidence underlying his convictions. To reverse a conviction for insufficient evidence, we must be persuaded, after viewing all the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.[6] After reviewing the record, we hold that there was sufficient evidence to convict Williams of the crimes charged. The state presented evidence that Williams had displayed a gun while stealing Spivery's cellular phone and Tubbs's car.[7] Both Tubbs and Spivery testified that both robbers had a firearm in their possession, and Spivery identified Williams as the man who had robbed her and Tubbs. Williams was apprehended the next day driving Tubbs's car and wearing the jacket that Spivery had described to the police.
We also hold that Williams's convictions were not against the weight of the evidence, as the jury did not lose its way in resolving any conflicts in the evidence so as to create a manifest miscarriage of justice.
Accordingly, the single assignment of error is overruled and the judgment of the trial court is affirmed.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App. R. 27. Costs shall be taxed under App. R. 24.
Winkler, P.J, Hildebrandt and Gorman, JJ.
[1] See Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052; State v. Bradley (1989), 49 Ohio St.3d 136,538 N.E.2d 373.
[2] See State v. Smith (1985), 17 Ohio St.3d 98, 100,477 N.E.2d 1128.
[3] Neil v. Biggers (1972), 409 U.S. 188, 199, 93 S.Ct. 375;State v. Lott (1990), 51 Ohio St.3d 160, 555 N.E.2d 293.
[4] See State v. Hurt (1972), 30 Ohio St.2d 86,282 N.E.2d 578; State v. Sherls, 2nd Dist. No. 18599, 2002-Ohio-939.
[5] See State v. Carney (1990), 67 Ohio App.3d 736,588 N.E.2d 872.
[6] State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541.
[7] R.C. 2911.01(A)(1) provides that "no person, in attempting or committing a theft offense * * * shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."