OPINION
Thomas Wells was charged by indictment with one count of attempted rape (count 1) and two counts of rape (counts 2 and 3) involving "C", a child of less than thirteen years of age. The indictment was tried to a jury two times.
At the first trial, the trial court entered a judgment of acquittal on count 1, which alleged Wells attempted to rape "C" on April 14, 1998. The jury was deadlocked on counts 2 and 3, that alleged rapes of "C" between October 1, 1996, and April 14, 1998, resulting in a second trial of counts 2 and 3, which resulted in convictions on those counts and prompted this appeal.
 1. THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. WELLS BY FAILING TO COMPLY WITH CRIMINAL RULE 12.
Wells contends under this assignment that the trial court failed to comply with Crim.R. 12 as to motions in limine filed in connection with the anticipated testimony of Staci Smith and Dr. Ralph Hicks. For reasons set forth in our discussion of the second and third assignments, any error of the trial court as to ruling on Wells' motions in limine was necessarily harmless.State v. Tolbert (1990), 70 Ohio App.3d 372, 388.
The first assignment is overruled.
 2. THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. WELLS BY ALLOWING A WITNESS WITH NO PERSONAL KNOWLEDGE TO TESTIFY THROUGH INADMISSIBLE HEARSAY.
At the second trial, the State's first witness was "M", the mother of "C", born August 24, 1990, the alleged victim. She testified that early on the morning of April 14, 1998, she observed Wells — who lived with her and her children — on his knees at the living room couch where "C" was sleeping. "(Wells') upper portion (was) huddled over (her) son's groin area." Upon seeing "M", Wells got up and quickly left the house for work. "M" testified that she suspected Wells had molested her son, that she called her sister and relayed that suspicion to her, and that she went to work and told her boss, who was a confidant, what had happened, and upon his advice contacted the police. She also testified that "C" had had behavioral problems within the previous year, and that he had told her subsequent to the April 14 incident "some particulars" involving Wells and himself. The State did not ask "M" to elaborate about these "particulars" and she did not.
Wells contends under this assignment that "M" should not have been permitted to testify because she lacked personal knowledge of the incidents which were the basis of counts 2 and 3, and because her testimony was largely hearsay.
Taking these contentions in reverse order, we have found upon our examination of "M"'s direct testimony little, if any, even arguable hearsay, and certainly nothing remotely prejudicial to Wells.
It is true that "M" lacked personal knowledge of the incidents for which Wells was on trial, and that her testimony related to count 1, for which a judgment of acquittal had been rendered in the first trial. The question then is whether "M"'s testimony was relevant, and if so whether its probative value was substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Evid. R. 403(A).
The State argued at trial and argues here that "M"'s testimony was relevant because through it the jury learned how the police became involved, and how "C" for the first time revealed the prior incidents involving Wells and himself that were the basis of counts 2 and 3. In our judgment, "M"'s testimony was relevant — see Evid.R 401 — in that it provided essential context for the evidence more directly related to counts 2 and 3. Furthermore, the prosecutor successfully minimized the potential for unfair prejudice by his careful questioning of "M". In our judgment, the probative value of "M"'s testimony was not outweighed by any danger of unfair prejudice.
The second assignment is overruled.
 3. THE TRIAL COURT ERRED BY ALLOWING DR. HICKS TO TESTIFY OUTSIDE THE AREA OF HIS EXPERTISE AND ADDITIONALLY BY ALLOWING THE DOCTOR TO TESTIFY TO THE VERACITY OF KEY PROSECUTION WITNESSES.
Ralph Hicks, M.D. was permitted to provide expert testimony on child abuse. Wells claims that Dr. Hicks did not qualify as an expert, testified beyond the scope of his claimed expertise, and impermissibly testified that key State witnesses were truthful.
Dr. Hicks testified that he is board certified in pediatric medicine and has worked as a pediatrician for twelve years. He testified that 50 — 60% of his time is devoted to child abuse as director of the child abuse program, called Care Clinic, at Children's Medical Center in Dayton. He testified that he has done 2200 — 2500 examinations of children suspected of being victims of sexual abuse, and that he is familiar with the professional literature concerning sexual abuse of children and has participated in some of the research projects himself. He also testified that the psychological impact upon children of sexual abuse was part of his area of expertise. He testified that he had been qualified in Ohio courts as an expert witness in child abuse 80 — 85 times.
Wells contends that Dr. Hicks should not have been permitted to testify because he was not board certified in the areas of child abuse, psychiatry, or psychology. In our judgment, Dr. Hicks' formal training and clinical experience with the sexual abuse of children qualified him to provide the expert testimony he gave in this case, and the trial court acted well within its discretion in so ruling.
Although Wells is correct that an expert witness may not render opinion evidence as to the truthfulness of witnesses, the record fails to demonstrate that Dr. Hicks did so. Dr. Hicks did testify that, typically, incidents of sexual abuse are not reported immediately. "C" did not immediately tell his mother or anyone else of the incidents upon which counts 1 and 2 were based. However, it is an unwarranted stretch for Wells to argue that by so testifying, Dr. Hicks was saying that "C"'s testimony about being sexually abused by Wells was truthful. See State v. Stowers (1998), 81 Ohio St.3d 260, 261.
Wells also claims that Dr. Hicks' use of the term "perpetrator" in general remarks about child sexual abuse somehow usurped the function of the jury. This objection was not voiced at trial, and the contention has not been persuasively advanced here.
Wells also contends that Dr. Hicks should not have been permitted to testify as to behaviors typically exhibited by child victims of sexual abuse. He claims that this testimony was beyond Dr. Hicks' expertise and usurped the fact finding function of the jury. The fact that Dr. Hicks is not board certified in child abuse, psychiatry, or psychology did not — given his formal training and clinical experience — disqualify him from providing this expert testimony. Secondly, it does not follow from the fact that "C" exhibited some of these typical behaviors that Dr. Hicks testified that "C" was a truthful witness.Stowers, supra.
Next, Wells seems to suggest that Dr. Hicks impermissibly vouched for the truthfulness of "M". Dr. Hicks testified as to his experience with parents of child sexual abuse victims. That "M"'s reaction after what she observed April 14 may have been consistent with the reactions of other parents in similar circumstances does not mean Dr. Hicks was vouching for her veracity. Id.
Finally, Wells contends that Dr. Hicks' trial testimony was inconsistent with testimony attributed to him in State v. Vaughn
(1995), 106 Ohio App.3d 775, an opinion rendered by the Court of Appeals for Butler County. Wells contends the State cannot have it both ways. Suffice it to say that any impeachment of Dr. Hicks based on prior inconsistent statements should have been attempted in the trial court. It was not, and cannot be attempted for the first time on appeal.
The third assignment is overruled.
 4. THE TRIAL COURT ERRED BY FAILING TO SUSTAIN THE RULE 29 MOTION AT THE END OF THE PROSECUTION'S CASE IN CHIEF.
 5. THE VERDICT AGAINST MR. WELLS WAS NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE.
 6. THE VERDICT AGAINST MR. WELLS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 7. THE TRIAL COURT DENIED MR. WELLS HIS CONSTITUTIONAL DUE PROCESS RIGHTS WHEN IT ALLOWED THE PROSECUTION TO AMEND THE COMPLAINT AGAINST MR. WELLS AFTER A RULE 29 MOTION FOR ACQUITTAL WAS MADE ON BEHALF OF MR. WELLS.
Count 2 involved fellatio or oral sex. Count 3 involved anal intercourse. At the end of the State's case, Wells moved for judgment of acquittal on both counts. The State opposed the motion and requested an instruction on attempted rape on Count 3 due to a question of whether the evidence established that actual penetration of "C"' anus had occurred. The trial court overruled the motion for judgment of acquittal as to both counts and eventually instructed the jury on attempted rape.
In our judgment, the trial court correctly instructed the jury on attempted rape on count 3. "C" testified that Wells "was trying to get (his penis) in the crack" (of "C"'s bottom). When asked "(d)id it (meaning Well's penis) ever go inside your bottom?", "C" answered "No." The trial court should have, however, granted judgment of acquittal on the principal charge of rape (anal intercourse) in count 3 because there was insufficient evidence of actual penetration of "C"'s anus by Wells' penis. "C" said there was no penetration, and Dr. Hicks testified that he couldn't tell from examining a crude diagram utilized at trial (which is not part of the record) whether there had been penetration. Dr. Hicks did not otherwise opine that there had been anal penetration. We decline to follow, as urged by the State, the Hamilton County Court of Appeals case of State v. Allen (May 8, 1985), Hamilton App. No. C-840479, unreported, which held that insertion of the penis between the buttocks, with no penetration of the anus itself, nevertheless satisfied the anal intercourse aspect of "sexual conduct." Although "penetration, however slight, is sufficient to complete . . . anal intercourse" — R.C. 2907.01 — the plain language of the statute requires penetration of the anus.
The trial court properly overruled the motion for judgment of acquittal as to count 2 involving fellatio. "C" testified that he removed his clothes at Wells' direction, and that Wells then put "C"'s penis in Wells' mouth and that his penis was in and out of Wells' mouth "a whole bunch of times." Indeed, Wells' main argument as to count 2 vis-à-vis his motion for judgment of acquittal is that "C" didn't say when the fellatio occurred. However, it is clear from the evidence that it occurred during the period that Wells resided with "M" and her children, and that time frame was stated in the indictment as the period within which the fellatio occurred. As the State observes, the date is not a material element of the offense and is not even a critical fact where, as here, "C" was at all times under the age of thirteen. See State v. Mundy (1994),99 Ohio App.3d 275, 296.
Our conclusions as to the motion for judgment of acquittal apply with equal force to Wells' contention that the evidence was insufficient to support findings of guilty on count 2 (fellatio) and count 3 (anal intercourse). We agree with Wells that the evidence as to anal intercourse was insufficient (although it was sufficient as to attempted anal intercourse). We disagree with Wells that the evidence was insufficient as to fellatio.
Wells contends that the conviction on count 2 was against the manifest weight of the evidence because "C" did not say when the fellatio occurred, the alleged fellatio left no mark on "C"'s penis, and because "C" testified that the fellatio did not make his penis wet. In that the fellatio was not violent or forceful, it was unremarkable that the fellatio would leave no mark. Furthermore, the "wetness" issue came up during cross-examination. "C" answered some of defense counsel's questions as follows:
 Q. When Tom put his penis on your — or when Tom put his mouth on your penis, it did not leave a mark, did it?
A. No.
Q. And it wasn't wet, correct?
A. I didn't feel it being wet.
 Q. If you didn't feel it, "C", then why did you just tell me a few moments ago that it was wet if you didn't feel that?
 A. It was wet — it was wet, of course, when he put it in his mouth.
Cross-examination of "C" was earnest and intense. Some confusion of this eight year old witness was to be expected. Wells' arguments do not persuade us that the finding of guilty on count 2 was against the manifest weight of the evidence.
We agree with Wells that the finding of guilty of anal intercourse was against the manifest weight of the evidence, although the manifest weight of the evidence supports the offense of attempted anal intercourse with a child under age thirteen.
The fourth, fifth, and sixth assignments of error are sustained in part and overruled in part. The seventh assignment of error is overruled.
 8. INAPPROPRIATE COMMENTS WERE MADE BY THE PROSECUTING ATTORNEY IN CLOSING ARGUMENTS TO THE JURY WHICH DENIED MR. WELLS OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL.
The gist of this assignment is that the prosecutor "attempted to rescue the case against Mr. Wells by alluding to the credibility, qualifications, and veracity of a `victim witness person' named Ada."
During the trial, defense counsel insinuated on cross-examination of "M" that Wells had indicated that he was no longer interested in the romantic relationship with "M" that had developed during the time Wells was living in "M"'s home, and that the charges against Wells were motivated by "M"'s desire for revenge. Defense counsel also insinuated, particularly through the cross-examination of "M" and "C", that "C"'s testimony had been coached by several people, including Ada Scruggs. During the opening phase of his closing argument, the prosecutor argued that the jury should find that "C" was a credible witness who had not been coached. He argued as pertaining to Ada Scruggs as follows:
 What about this person, Ada, victim witness person? We don't know her. Some of you may have figured out who she is from being in the courtroom, but there is no evidence in regard to Ada.
 Do you want me to tell you what is on the record. He talked to people. Victim witness talked to him, people in the police department, and they told him — oh, ladies and gentlemen, I'm ashamed to admit it, they told the boy to tell the truth. I'm sorry, we did that. We're not going to do it anymore. We're not going to encourage them to tell the truth. We're not going to send victim advocates to help get through the process six, seven, eight year olds or mothers deeply wounded. Get real. Let's get real. Do you believe that it is even possible that this kid got put up to this by the mom, Ada, the detective, the prosecutor's office?
 Ladies and gentlemen, let me suggest to you right now that this woman is so capable that if she had wanted to put this kid up to it, he'd done a hell of a lot better job than he did before you yesterday.
While Ada Scruggs was not a witness, the prosecutor did not "allud(e) to (her) credibility . . . and veracity" or vouch for them. Defense counsel had already developed on cross-examination of "C" that Ada Scruggs had been sitting with him outside the courtroom during the trial, and that "C" had spoken to her. The jury, therefore, knew that "C" had spoken to Ada Scruggs. The prosecutor only went outside the record when he identified Ada Scruggs as a capable victim witness advocate. While this was improper, without more it hardly infected the proceedings with prejudicial error. The prosecutor's argument was that if a capable victim witness advocate had actually coached "C", he would have been a more impressive witness than he actually was. Ada Scrugg's veracity was not an issue, and the prosecutor did not vouch for it. "C"'s veracity was an issue. The prosecutor did not vouch for "C"'s veracity. Rather, he urged the jury to find "C" credible because a coached witness — as insinuated — would have been a more impressive witness than "C" had been. This was proper argument.
The eighth assignment is overruled.
The judgment on count 2 will be affirmed. The judgment on count 3 will be reversed, and the matter will be remanded for entry of a finding of guilty of attempted rape and imposition of sentence.
GRADY, P.J. and KOEHLER, J., concur.
(Hon. Richard N. Koehler sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Andrew T. French.
L. Patrick Mulligan.
Hon. John P. Petzold.