DECISION.
The defendant-appellant, Lisa Johnson, brings this appeal from the judgments entered and the sentences imposed upon the verdicts of a jury finding her guilty of theft (R.C. 2913.02) and dereliction of duty (R.C.2921.44[A][2]), the separate appeals having been consolidated under the case numbered C-990482 upon our docket.[1]
Lisa Johnson, a uniformed member of the Cincinnati Police Division since 1991, was working a detail at the University Plaza, a complex of retail establishments in Cincinnati, in the late evening hours before, and the early morning hours of, April 16, 1998. In particular, Johnson patrolled the parking lot of the plaza in the vicinity of a Kroger grocery store to provide security in that area. At about 2:00 a.m., she took shelter within Kroger from a rainstorm and began conversing with some of its employees with whom she had an acquaintanceship. Monica Simpson, on duty as a cashier, offered Johnson certain coupons that had been issued by the Brita Corporation, a manufacturer and distributor of water filtration devices.
Johnson first declined Simpson's offer because Johnson, a frequent user of coupons of various kinds,[2] did not want to take what she considered to be Simpson's coupons. The coupons themselves were generated by a device linked electronically to the cash register, which tallied and recorded customers' purchases and the credits accruing from redemptions of coupons. The device would print a Brita coupon only when a cashier would record the purchase of a Brita product. The coupons were in the amount of $5.00 or $4.00, depending on what Brita product was purchased, and were redeemable on any product in Kroger. In that sense, the coupons were the functional equivalent of cash. Each bore the following caveat: "Manufacturer will pay retailer for face value Cof coupon * * * provided retailer and consumer have complied with offer, [and] that invoices proving product purchase to cover coupons must be available from retailer."
The station at which Monica Simpson's cash register was located was covered by a surveillance camera, which was known to both Johnson and Simpson. The tape from that camera established for investigation that at 2:12 a.m., April 16, 1998, Johnson and Simpson were at the register together. The linkage between the register and the generating device included an "electronic journal report" that revealed to Kroger's supervisors that three Brita coupons totalling $14.00 were generated sequentially at that time. Each sale that triggered the device to generate a coupon was voided immediately after the coupon appeared. Simpson admitted that she used a Brita water-filter pitcher to generate coupons by scanning it, and that she voided the "sale" by using a key to the cash register obtained from another cashier. Simpson's testimony as a state's witness was that she gave Johnson the three coupons produced by the bogus sales. Simpson then put the pitcher back on the shelf from which she had taken it before it was scanned. She testified that before Johnson accepted the coupons, Johnson told her that what she was doing "may be wrong," "may not be right" and that "it was like stealing." Within a matter of minutes after receiving the coupons, Johnson redeemed them as a $14.00 credit toward the purchase of dog food.
A few days later, the customer-service manager at Kroger gathered all the redeemed coupons to collate them for submission to the various manufacturers for payment to Kroger in accordance with the terms of the agreements. Among those coupons were those issued by Brita. The manager noticed the number of Brita coupons, considered them to be "excessive" and notified the assistant manager at the store. An investigation was begun, and when Johnson became aware of it, she, on her own initiative, discussed her involvement in the exchange of Brita coupons with one of her superior officers. Ultimately, Johnson was interviewed by members of the Cincinnati Police internal-investigations unit. An audio tape of the interviews was received as an exhibit upon trial; a copy had also been given to Johnson.
The assistant manager testified that Kroger did not present the three coupons used by Johnson to Brita for payment, because no Brita product had been purchased as required by Brita's ageement with Kroger. Consequently, Kroger, in the words of the witness, "lost that money,"viz., the $14.00 credited to Johnson when she bought dog food. This constituted the basis upon which Johnson was charged with theft.[3]
The charge of dereliction of duty was founded upon Johnson's admitted belief that Simpson's activities on April 16, 1998, were wrong to the extent that a theft may have been committed or was being committed when Simpson was causing cash-value coupons to be generated without a purchase of a Brita product. Simpson's conduct was in Johnson's presence, but Johnson did not reveal her knowledge of it until Kroger's investigation had begun.[4]
The first of Johnson's seven assignments of error is this:
 The trial court erred to the prejudice of appellant's right to due process of law under the 14th Amendment of the U.S. Constitution and the Ohio Constitution, Art. I. § 16, in entering judgments of conviction where the prosecution informed the jury that a codefendant had been found to have committed, or been convicted of, the same offense for which the appellant is being tried, and in overruling defense objections and motions for mistrial complaining that the state had so informed the jury.
 In addition to the involvement of Monica Simpson, evidence adduced by the prosecution brought into play the name of another cashier on duty at Kroger in the early hours of April 16, 1998. That person was Stephanie Harkness,[5] the cashier from whom Simpson had obtained the key used to void the pretextual purchase of the Brita product that generated the coupons accepted by Johnson. The witness involved in the context of the first assignment was a sergeant attached to the internal-investigations section who participated in Johnson's interviews. Defense counsel engaged the sergeant in prolonged, aggressive cross-examination respecting police practices and procedures. The examination concluded with an inquiry about why there was a delay between the discovery of the excessive number of Brita coupons (soon after the issuance of the three involved here) and the date of the complaints (January 19, 1999). When another police officer, the lieutenant who had signed the complaints against Johnson, testified, the prosecutor asked, "[W]hy could not the complaint be signed against Lisa [the defendant-appellant] until January of '99? Why did it take eight months?" The witness responded, "It took that long because we had to complete other aspects of our investigation." Without objection from defense counsel, the witness expanded his answer to explain that, based on his training, Monica Simpson could not have been compelled to testify in a prosecution of Johnson if Simpson had pending criminal charges against her. Sequentially, his answers included the following:
 A. * * * Under the United States Constitution she has a Fifth Amendment Right against self-incrimination. If she has a pending criminal matter at hand, she can't implicate herself or she has a right to refuse to implicate herself in a criminal acitivity or alleged criminal activity.
 Once she is convicted of a criminal offense, she has no longer has that Fifth Amendment Right in regards to that matter and she can be compelled to testify.
Q. Do you know when she was finally convicted?
 A. The date that the charges were signed on Officer Johnson, I believe.
 Q. What about a cashier named Stephanie? Do you remember her?
 A. Yes, sir. That would be Stephanie Harkness. She had the same situation. She was currently in process for a criminal matter. Had she been called as a witness, again, she had the Fifth Amendment Right against self-incrimination.
 At that point, defense counsel moved for a mistrial, without defining his reasons, and invited the court to delay argument "until a later time." The prosecution asked no further questions.
On cross-examination, defense counsel questioned the witness about a citizen's right to waive constitutional rights and whether the officers interviewed by the internal-investigations section had Fifth Amendment rights. The witness responded in this fashion:
Q. They have Constitutional Rights which they can waive?
A. That's correct.
 Q. Did they waive them? They freely spoke with you? You didn't have to wait until after a trial was over to use their statements, did you?
 A. I'm not familiar with that, Mr. Burlew. Yeah, as far as I was concerned, yes, they had to. They could until called on the witness stand. At that point in time, they had not been convicted, and exercised their Fifth Amendment Right not to speak.
Defense counsel then inquired of the witness whether he remembered "a lawsuit filed by Ms. Johnson against the Chief of Police, Michael Snowden, and the City of Cincinnati." The purpose of that lawsuit was to compel the respondents either to charge her with a crime or to reinstate her police powers. The clear tenor of the questioning was to suggest that the charges levelled against Johnson were in retaliation for her lawsuit. In argument to the jury, Johnson's counsel said,
 And, now, she's had her gun removed. She's put in T. Crew. Sitting in a box. Gaining weight. Nothing happening. And she was charged — you can believe it's coincidence. You can believe it's coincidence, if you want — when she filed the lawsuit against Michael Snowden, Chief of Police, and the City of Cincinnati stating give me my job, give me my badge, give me what you've taken away from me, or give me a hearing, or charge me with a crime.
The allusion to "T. Crew" related to the duty to which Johnson was assigned after she "had her gun removed." She was at a desk taking telephone complaints from citizens about, for example, thefts from their automobiles. Johnson could neither make arrests nor, consequently, be compensated beyond her salary for time spent in court or work details. The court permitted her to testify as to her pecuniary loss, which she approximated to be $50,000.
The first assignment is predicated on this proposition:
 Advice to the jury that a codefendant/complicitor of the defendant has been found to have committed, or was convicted of the same offense for which the defendant is on trial is irrelevant, prejudicial, and violates the fundamental right to a fair trial secured by the due process clause, requiring reversal of the conviction.
Johnson's counsel on appeal argues correctly that, in general, a prosecutor is barred from spreading before a jury evidence that a codefendant has been convicted, because the fundamental concept of law is that a verdict must be based on evidence adduced at a defendant's trial and not upon evidence from the trial of another. In State v. Tolbert
(1990), 70 Ohio App.3d 372, 591 N.E.2d 325, this court held that a question that elicited evidence of a codefendant's conviction was improper but did not constitute plain error. There, Tolbert had been convicted of complicity to murder for driving the "getaway" vehicle after a man had been shot to death. The convicted murderer was Clarence Carter. The prosecutor's reference to Carter's conviction was singular and isolated to the extent that this court held that it did not affect a substantial right possessed by Tolbert, nor did it result in a manifest miscarriage of justice.
Without question, the general rule is valid, but it is not inflexible, rigid, or absolute. In State v. Allen (March 1, 1996), Greene App. No. 95-CA-38, unreported, at 4,[6] the court stated,
 It is well settled that one person's guilty plea or conviction may not be used as substantive evidence of the guilt of another. The introduction of a codefendant's guilty plea is permissible, however, when its use is limited to proper evidentiary purposes such as to impeach trial testimony or to reflect on a witness' credibility. United States v. King (5th Cir. 1974), 505 F.2d 602.
We assume, arguendo, that Simpson could be characterized as a "codefendant," although she was not so charged in the complaint against Johnson alleging the theft offense. Additionally, when the Kroger customer-service manager was on the witness stand describing her collation of coupons and was, in the opinion of defense counsel, about to involve Simpson and, possibly, other cashiers and other thefts, the court stated to counsel unequivocally, "I'll give you [the prosecutor] some latitude * * * to establish directly what is alleged as against this specific Defendant. This is not a conspiracy trial." (Emphasis ours.) Without question, neither Simpson nor any other cashier could have been a codefendant with Johnson in the charge of dereliction of duty as a police officer.
In an earlier case, State v. Clark (May 4, 1994), Montgomery App. No. C.A. 13435, unreported, Judge Brogan wrote for a unanimous panel that evidence of convictions of codefendants normally has no place in another defendant's trial. But where opposing counsel has left an impression of unfairness that invites evidence to rebut such an inference, one of the narrow instances in which such convictions may be brought to the attention of the jury is created. Id. at 7-8.
The record convinces us that the use of Simpson's conviction served a proper evidentiary purpose for at least two reasons. First, it tended to explain the lapse of some eight months before Johnson was charged, viz., the span between April 16, 1998, and January 19, 1999, a delay that the defense emphasized as being extraordinary. Whether the police were correct, legally, in their interpretation of Simpson's Fifth Amendment rights was not determinative. The significant point was that the defense by its tactics invited it.
Another reason was that Johnson was being tried on the twin complaints jointly. Proof of Johnson's commission of dereliction of duty required proof that she "did negligently fail to prevent or halt the commission of an offense." When Johnson formed the conclusion in her own mind that in some manner Simpson's production of coupons was wrong to the extent that it constituted theft, Johnson as a police officer had a duty to proceed in an appropriate way. Introduction of evidence tending to show Simpson's ultimate conviction of theft thus became admissible.
The court's charge to the jury was comprehensive and correct. Neither the prosecutor nor defense counsel lodged an objection to it, or suggested an amplification or limitation.
We hold, for the reasons given, that the evidence disputed by Johnson's first assignment of error was relevant to issues properly before the jury, was not prejudicial, and did not deprive Johnson of a fair trial. The first assignment, accordingly, is not well taken and is overruled.
The second, third and fourth assignments of error are as follows:
 The trial court erred to the prejudice of appellant by entering judgment of conviction after a trial in which the prosecution committed many basic and fundamental violations of the right to due process of law under the Fourteenth Amendment to the U.S. Constitution by violating the discovery rules and withholding from the defense until mid-trial information to which appellant was entitled well before commencement of trial.
 The trial court erred to the prejudice of appellant's right to due process of law under the U.S. and Ohio Constitutions by overruling her motion for new trial.
 The trial court erred to the prejudice of appellant by admitting over defense objections, motions for mistrial and motions to strike, evidentiary material which had not been provided to the defense in discovery, though a reasonable request for discoverable materials had been duly made.
Johnson's counsel has elected to argue and to submit these assignments as a unit, and has condensed the several issues thusly:
 One charged with crime has the right under Ohio law and the due process clause of the U.S. and Ohio Constitutions to discovery of certain evidentiary materials within the possession of the prosecution, and where the prosecution withholds, until after the commencement of a jury trial, the statement of a codefendant, the identities of several witnesses to be called by the state, videotapes of a statement of the accused, and an actual videotape of the commission of the purported offenses themselves, some of which the defense never obtained though belatedly learning of their existence, the accused has been prejudiced in the preparation and presentation of her defense, her due process rights had been violated, and she is entitled to a reversal of her convictions and a new trial.
The record of this case is lengthy and convoluted. In some instances, both counsel referred to conversations and other exchanges, the details of which are not of record except through argument. Some of the issues were debated, at times vociferously, during the trial. In all instances, despite the marked disagreements between defense counsel and the prosecutor, the court carefully, soberly, and dispassionately considered the questions and resolved them only after both sides were heard at length.
We have reviewed those same presentations with an eye to whether Johnson was denied due process or was prejudiced in the preparation and presentation of her defense. Many, if indeed not all, of the disputes between counsel with respect to discovery were factual, although in the final analysis the determinative question was one of law.
Application of Crim.R. 33, which provides the particulars upon which a motion for a new trial may be brought, demands two standards of review depending upon the grounds relied upon by the movant. If the ruling on the motion requires the exercise of discretion, e.g., what was done or not done, said or not said, in the process of discovery, then a trial court will be reversed only upon a showing of abuse of that discretion. Upon the record before us, we cannot say that the court below displayed an attitude that was unreasonable, arbitrary or unconscionable. Consequently, those factors being the vital parts of the definition of abuse of discretion, one now so deeply rooted in law as to need no citation of authority, we hold that the court did not abuse its discretion.
Where the resolution of the issues within a motion for a new trial does not involve discretion, the trial court's decision must be shown to be erroneous as a matter of law. We have, therefore, employed that standard of review as well, and have concluded that the court did not err as a matter of law on any occasion during the trial or in overruling Johnson's motion for a new trial on either or both of the charges against her. The second, third and fourth assignments are overruled because they are not demonstrated by the record.
Johnson's fifth, sixth and seventh assignments raise, respectively, the issues whether the convictions were contrary to law because the evidence adduced was insufficient to establish every element of the crimes charged, whether the convictions were contrary to the manifest weight of the evidence, and whether the court erred in denying Johnson's motions for acquittal.
The essentials of these assignments, which have also been submitted as a unit, are that the prosecution failed to prove, with respect to the theft charge, that Kroger was the "owner" of the property obtained without consent, and that Johnson lacked the requisite mens rea with respect to the charge of dereliction of duty. Reduced to their essence, the facts that the jury was entitled to find from the evidence and the reasonable inferences therefrom were that Johnson knew the coupons produced by Simpson's scanning were not preceded by a valid purchase of a Brita product as required by their terms; that Johnson recognized and used the coupons as the equivalent of cash; and that Simpson's actions were tantamount to theft. When Johnson used the coupons as cash, Kroger suffered a loss because by contract, it could not submit them to Brita for payment. Indisputably, Kroger was, in law, the victim of a theft as that offense is defined in R.C. 2913.02. When Johnson saw what Simpson had done and engaged her in conversation about what she was doing, Johnson, by her own admissions to her interrogators in the internal-investigations unit and by her own testimony at trial, knew that Simpson's actions were wrong, possibly criminal, and did nothing to halt them immediately or thereafter. Indisputably, she was derelict in her duty within the purview of R.C. 2921.44. The assignments are meritless.
The ad hominem arguments of Johnson's trial counsel, viz., that Johnson was a single mother of three small children, struggling to finance the purchase of a home and working long, stressful hours on and off duty as a police officer; that she was sorely fatigued in the early morning hours of April 16, 1998, when she took coupons from a cashier who herself thought nothing was wrong; and that she was belatedly prosecuted somehow in retaliation for her temerity in filing a lawsuit against the city and her commanding officer, failed to persuade the jury. We are convinced that, in all respects, Johnson received a fair trial and that the verdicts were founded on evidence sufficient in law and adequate in weight.
For the reasons given, none of the assignments of error are well taken and are overruled in toto. Therefore, the judgments of the Hamilton County Municipal Court are affirmed.
Doan, P.J., Gorman and Shannon, JJ.
Raymond E. Shannon, retired, from the First Appellate District, sitting by assignment.
[1] After a thorough examination of the record as its stands certified, we are unable to locate the jury verdict forms. It is clear, however, from the transcript of the proceedings that the signed verdicts were returned in open court and were read by the clerk, and that the members of the jury were polled. The journal entry subscribed by the judge presiding at the trial demonstrates that the jury returned verdicts of guilty in each case. None of the assigned errors raise an issue respecting the absence of the forms.
[2] Johnson characterized herself as "the Coupon Queen" because of the number of them that she redeemed routinely.
[3] The complaint specified that Johnson "with purpose to deprive the Kroger Co. * * * did knowingly obtain 2 five dollar off and 1 four dollar off coupons without the consent of the owner or person authorized to give consent * * * in violation of section 2913.02 of the Revised Code of Ohio * * *."
[4] The complaint, signed by an officer of the Cincinnati police, specified that "on * * * April 16, 1998, [Lisa Johnson,] as a law enforcement officer, did negligently fail to prevent or halt the commission of an offense or to apprehend an offender, when it is in his [sic] power to do so alone or with available assistance * * * contrary to * * * Section 2921.44 of the Revised Code of Ohio."
[5] In testimony from another witness, she was referred to as Stephanie Bradford.
[6] Judge Brogan's opinion contains a detailed history of the evolution of the rule against employment of the fact of conviction of another, and of its varied applications in both federal and state courts.