OPINION
Appellant, Jeremy D. Elersic, appeals the August 7, 2000 judgment entry of the Lake County Court of Common Pleas.
On September 24, 1999, appellant was indicted by the Lake County Grand Jury for receiving stolen property with a one-year firearm specification, a felony of the fourth degree, in violation of R.C. 2913.51. Appellant filed a notice of alibi on May 30, 2000, notifying the prosecution of his intention to claim an alibi defense.[1] A jury trial took place on July 11, 2000.
The testimony at the trial revealed that in April 1999, the home of Douglas Tenney ("Tenney"), which was located in Perry, Ohio, was broken into, and many guns were removed. Specifically, a Colt .357 revolver, which had the serial number PY4035, was taken from Tenney's home.
James Gridiron ("Gridiron") testified that appellant was employed by him as a laborer and finisher. Gridiron further stated that while on a job site, he spoke to appellant about purchasing a firearm. Gridiron told appellant that he wanted "something that wasn't stolen, something that [he] didn't have to worry about being traced * * *." On June 23, 1999, Gridiron proceeded to buy a gun for $650, the Colt .357, from appellant and his brother, Shane Elersic ("Shane"). Appellant told Gridiron that "his brother [Shane] had a couple guns that he was looking to get rid of and he didn't go into detail." After Gridiron received the gun, he had his father, a city of Painesville police officer, check the serial number on it. He was informed that it was not stolen.
Gridiron later received a telephone call from Lt. Lonnie Sparkman ("Lt. Sparkman") of the Lake County Sheriff's Department that the gun he had in his possession had been stolen. Lt. Sparkman was involved with the investigation of the break-in that occurred at Tenney's house. Thereafter, Gridiron gave the weapon to his father, who turned it into Lt. Sparkman around August 4, 1999.
Less than two weeks after Gridiron discovered that the gun was stolen, Gridiron told appellant that the gun was stolen and that he had turned it in to the police. Appellant informed Gridiron that he had no knowledge of the weapon being stolen.
Robert Michael Fazzolare ("Fazzolare") testified that he was involved in criminal activities with Shane, and that he had known appellant for about six years. He recalled that in the spring or summer of 1999, appellant and Shane showed him a Colt .357. Fazzolare stated that both appellant and Shane wore socks on their hands when they handled the gun. Fazzolare also overheard appellant and Shane discussing that appellant would "get rid of it [the gun]" by taking it to work and selling it to his boss.
Deputy Kevin Coleman ("Deputy Coleman") of the Lake County Sheriff's Department testified that he became involved in the investigation of the Colt .357 because he was connected with breaking and entering investigations that had occurred in the area. After Lt. Sparkman retrieved the firearm from Gridiron, Deputy Coleman had an opportunity to inspect it. He related that he took the weapon to the Lake County range facility to test fire six rounds from it. He determined that the gun was operable each time he fired it, but he indicated that he did not make a report of the test. At the close of the state's case-in-chief, appellant moved for a judgment of acquittal pursuant to Crim.R. 29, which the trial court overruled.
Appellant's girlfriend and mother of his two children, Dawn Ferren ("Dawn"), testified on his behalf. She related that on June 23, 1999, appellant arrived at her duplex around 4:30 p.m. and spent the night because she had prepared a birthday dinner for her sister, Tonya Farren ("Tonya"). Dawn stated that she had been aware of the charges against appellant from the beginning. However, the prosecutor pointed out to Dawn that after possibly "nine trial dates came and went, this [was] the first that the Court ha[d] heard about an alibi witness with [appellant] at the time that he's alleged to have sold the gun[.]" Appellant's attorney objected to that line of questioning. Furthermore, the prosecution questioned her as to why she had never told the sheriff's department, the judge, or the prosecutor that appellant was at her residence on June 23.
Tonya verified that appellant was at the duplex on June 23, 1999. Tonya stayed at Dawn's duplex until 11:30 p.m. and recalled that appellant was there the entire time.
Tonya also related that she was unaware of the charges against appellant.
Appellant testified in his own behalf and stated that on June 23, 1999, Gridiron dropped him off at Dawn's duplex. He celebrated Tonya's birthday and spent the night at the duplex. Appellant further denied ever seeing or touching the Colt .357. At the close of his case, appellant renewed his Crim.R. 29 motion, which was overruled.
Appellant was found guilty of receiving stolen property with a one-year firearm specification. On July 25, 2000, appellant filed a motion for judgment of acquittal and a motion for a new trial. Both motions were denied on August 7, 2000. In a judgment entry dated August 7, 2000, appellant was sentenced to eight months for receiving stolen property with an additional one-year on the firearm specification. It is from that entry appellant timely filed the instant appeal and now asserts the following as error:
 "[1.] The trial court erred to the prejudice of [appellant] in matters relating to [d]iscovery.
 "[2.] The trial court erred to the prejudice of [appellant] by allowing the [s]tate to admit evidence regarding the date [appellant] filed his [n]otice of [a]libi.
 "[3.] The verdict finding [appellant] guilty is against the manifest weight of the evidence.
 "[4.] The trial court abused its discretion when imposing [a] sentence against [appellant] in violation of the purposes and principals of felony sentencing.
 "[5.] The trial court erred in sentencing [appellant] to a term of incarceration of one year on a firearm specification charge pursuant to [R.C.] 2941.141 when the underlying conviction was against the manifest weight of the evidence.
 "[6.] Appellant was denied the effective assistance of counsel at trial as appellant's trial counsel failed to raise legitimate constitutional and legal challenges to the imposition of a firearm specification on the charge of receiving stolen property of the same firearm."
Under his first assignment of error, appellant claims that the trial court erred in matters relating to discovery. Specifically, appellant maintains that the trial court violated his due process rights by allowing Deputy Coleman to testify regarding the operability of the Colt .357. Appellant also alleges that the trial court erred by not ordering the state to disclose evidence of a deal that the state made with its witness, Gridiron, in exchange for his testimony. Appellant explains that the lack of evidence as to Gridiron's alleged deal with the state prevented his attorney from being able to expose Gridiron's bias and motivation behind his testimony.
As to the argument that the trial court erred by allowing Deputy Coleman's testimony, appellant relies on Crim.R. 16(B)(1)(d), which states that:
 "Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, made in connection with the particular case, or copies thereof, available to or within the possession, custody or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney."
Moreover, appellant cites the case of State v. Cheesbro (Mar. 4, 1996), Adams App. No. 95 CA 591, 1996 WL 107435. In Cheesbro, the Fourth Appellate District stated that "[p]ursuant to Crim.R. 16(B)(1)(d), [the state] had a duty to exercise due diligence to find out whether such a test existed. The state must disclose evidence the existence of which is known or which through the exercise of due diligence may become known to the prosecution." Id. at 3.
"The purpose of discovery rules is to prevent surprise and the secreting of evidence favorable to one party. The overall purpose is to produce a fair trial." Lakewood v. Papadelis (1987), 32 Ohio St.3d 1, 3. In addition, "[a] trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." Id. at paragraph two of the syllabus.
In the case sub judice, we agree with the Cheesbro analysis, that the prosecution should have provided the results of the test firing to appellant's trial counsel. Yet, appellant was put on notice, via the firearm specification contained in the indictment, that the requirements for a firearm had to be proved. Further appellant's trial counsel did interpose a timely objection to Deputy Coleman's testimony regarding the testing of the firearm, which the trial court overruled. However, defense counsel did not ask for a brief continuance, at the time when Deputy Coleman testified about the functional capability of the gun in question, to seek an independent test of the firearm or prepare a more focused cross-examination of the witness on that issue. Therefore, any error that may have occurred was harmless beyond a reasonable doubt. "Where constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt."State v. Williams (1983), 6 Ohio St.3d 281, paragraph six of the syllabus. Accordingly, this argument is not well-founded.
As to appellant's contention that there was a deal between the state and its witness, Gridiron, we conclude this argument also lacks merit. Lt. Sparkman specifically testified that there was no deal or immunity given to Gridiron in exchange for his testimony. Further, Lt. Sparkman explained that Gridiron was not even being investigated for any criminal charges. Thus, there was no evidence presented at trial of any sort of an immunity agreement between the state and Gridiron. Appellant's first assignment of error is not well-taken.
For his second assignment of error, appellant posits that the trial court erred by permitting the prosecution to adduce evidence regarding the date appellant filed his notice of alibi. Crim.R. 12.1 requires a defendant, who wishes to raise an alibi defense, to file a notice of alibi not less then seven days before trial, a rule with which appellant complied. Further, the prosecuting attorney may not present evidence of the date that the defendant filed the notice of alibi because the failure to file it promptly is not probative of guilt and because it is tantamount to adducing evidence about the defendant's silence. State v.Tolbert (1990), 70 Ohio App.3d 372, 381; State v. Sims (1982),3 Ohio App.3d 331, 334.
Here, the record shows that the state adduced evidence and argued about the date that appellant filed his notice of alibi. Even though this conduct was patently improper and the trial court erred in permitting it, we cannot conclude that the error was so egregious that it deprived appellant of a fair trial. State v. Goff, 82 Ohio St.3d 123, 140,1998-Ohio-369. Other comments by the prosecutor about how appellant's alibi witnesses, Dawn and Tonya, did not talk to the police and did not come forward until the trial were fair comments on the evidence. Therefore, they were not improper. Accordingly, we cannot say that the actions of the prosecutor affected a substantial right of appellant or that a manifest miscarriage of justice occurred.
Although appellant testified that he was at Dawn's home at the time the gun in question was allegedly sold to Gridiron, he also stated that Gridiron drove him to Dawn's house and dropped him off about 4:30 p.m. Hence, appellant's alibi does not dispute that he was with Gridiron during part of the approximate time the alleged gun was sold. Consequently, appellant has failed to demonstrate that he was materially prejudiced by the foregoing questions submitted by the prosecutor to the alibi witnesses. Appellant's second assignment of error lacks merit.
In his third assignment of error, appellant argues that his conviction was against the manifest weight of the evidence. A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52. In determining whether a verdict is against the manifest weight of the evidence, this court reviews "`* * * the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."' * * *" (Emphasis sic.) State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 WL 738452, at 5. Further, it is within the discretion of the trier of fact to determine the credibility of witnesses and the weight to be given to their testimony. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
Appellant claims that Gridiron was not credible because he initially told the police he had purchased a Colt .45 from appellant rather than the Colt .357. He later told the police that he bought the Colt .357 from appellant. However, at the jury trial, Gridiron clarified the inconsistency and explained that before he acquired the Colt .357 from appellant, he had been discussing both the Colt .45 and Colt .357. As a result, he got the two guns mixed up.
Appellant also attacks the credibility of another state's witness, Fazzolare. Appellant claims that Fazzolare recounted events at the trial in a different way than he had previously done. However, at the trial, Fazzolare recalled that appellant and his brother, Shane, had shown him the Colt .357. As to any inconsistencies in his testimony at appellant's trial, Fazzolare explained that he felt intimidated by Shane since they were in prison together, and he had asked to be separated from Shane because of threats he received.
In his brief, appellant refers to the testimony of Dawn and Tonya, which provided that he was at Dawn's duplex celebrating Tonya's birthday. Yet, based on the record before us, it is apparent that the fact finder gave credence to the state's witnesses. Further, the state's case involved more than enough testimonial evidence, if believed, to support the offense for which appellant was charged. Thus, we cannot conclude that the jury lost its way or created a miscarriage of justice in finding appellant guilty. Appellant's third assignment of error is without merit.
In the fourth assignment of error, appellant asserts that the trial court abused its discretion by not imposing the minimum sentence. A reviewing court will not reverse a sentence unless an appellant shows that the trial court was statutorily incorrect or that it abused its discretion by failing to consider sentencing factors. State v. Earle
(June 26, 1998), Lake App. No. 96-L-195, 1998 WL 553014, at 2. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157.
R.C. 2929.14(B) provides, in relevant part:
 "* * * if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense * * * unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
In State v. Edmonson, 86 Ohio St.3d 324, 327, 1999-Ohio-110, the Supreme Court of Ohio determined that a trial court sentencing an offender to his first imprisonment must specify on the record that one or both of the reasons enumerated in R.C. 2929.14(B) justifies the imposition of a sentence greater than the statutory minimum.
In the instant case, the trial court sentenced appellant to eight months of incarceration for a fourth degree felony. The minimum term of imprisonment for a fourth degree felony is six months. R.C. 2929.14(A)(4).
The Supreme Court of Ohio, in Edmonson, 86 Ohio St.3d at 326, held that "R.C. 2929.14(B) does not require that the trial court give its reasons
for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence." (Emphasis sic.) The Edmonson court further held that, although a trial court is not required to state the underlying reasons for imposing more than the minimum sentence, it "must note that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons." Id.
This court has also stated that when an appellant has not previously served a prison term, the trial court is required to make an express finding on the record that the shortest prison term would demean the seriousness of the appellant's conduct or would not adequately protect the public from future crime by him or others. State v. Kartashov (July 20, 2001), Ashtabula App. No. 2000-A-0039, 2001 WL 822334, at 2; Statev. Fitzpatrick (Dec. 1, 2000), Lake App. No. 99-L-164, 2000 WL 1774139, at 3.
Here, the trial court made the following findings as part of its sentencing exercise: the victim suffered serious economic harm; appellant was more likely to commit future crime because the offense was committed while he was on bail, under community control sanctions, or post release control; appellant had a previous criminal history, including juvenile delinquency and adult violations; appellant had not rehabilitated himself to the extent that he could be considered a law abiding citizen; appellant showed no genuine remorse; and the shortest prison term would demean the seriousness of appellant's conduct and would not adequately protect the public from future crime from appellant or others. Further, the sentencing entry stated that "the shortest prison term [would] demean the seriousness of [appellant's] conduct and the shortest term [would] not adequately protect the public from future crime by [appellant] or others."
Based on the foregoing, it is our view that the trial court provided the pertinent statutory language required by R.C. 2929.14(B) for deviating from the minimum sentence. The trial court found, not only one of the sanctioned reasons enumerated under R.C. 2929.14(B) for deviating from the minimum sentence, it found both. This is true even if the gun in question were to be returned to Tenney after this case is finally concluded. Appellant's fourth assignment of error is not well-founded.
Under his fifth assignment of error, appellant argues that the trial court erred by imposing the one-year mandatory sentence on the firearm specification when the underlying conviction was for receiving stolen property of the firearm in violation of R.C. 2913.51. Appellant reasons that the legislature did not make the charge of receiving stolen property of a firearm subject to a mandatory period of incarceration.
R.C. 2913.51(C) provides that "* * * if the property involved is a firearm or dangerous ordnance * * * [the crime of] receiving stolen property is a felony of the fourth degree." Furthermore, R.C.2929.14(D)(1)(a) states that:
 "Except as provided in division (D)(1)(e) of this section, if an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a specification of the type described in section 2941.141, 2941.144, or 2941.145 of the Revised Code, the court shall impose on the offender * * *:
 "* * * A prison term of one year if the specification is of the type described in section 2941.141 of the Revised Code that charges the offender with having a firearm on or about the offender's person or under the offender's control while committing the felony."
R.C. 2941.141(B), deals with specification concerning possession of a firearm essential to affect a sentence, and provides that the "[i]mposition of a one-year mandatory prison term upon an offender under division (D)(1)(a) of section 2929.14 of the Revised Code is precluded if a court imposes a three-year or six-year mandatory prison term on the offender under that division relative to the same felony."
Moreover, R.C. 2929.14(D)(1)(e) provides that:
 "The court shall not impose any of the prison terms described in division (D)(1)(a) of this section or any of the additional prison terms described in division (D)(1)(c) of this section upon an offender for a violation of section 2923.12 or 2923.123 of the Revised Code. The court shall not impose any of the prison terms described in division (D)(1)(a) of this section or any of the additional prison terms described in division (D)(1)(c) of this section upon an offender for a violation of section 2923.13 * * *.
From the foregoing statutory language, it is clear that R.C.2929.14(D)(1)(e) disallows enhancements relative to R.C. 2923.12
(carrying a concealed weapon), 2923.123 (illegal conveyance of a deadly weapon or dangerous ordnance in a courthouse), and 2923.13 (having a weapon while under disability). The statute does not mention R.C. 2913.51, receiving stolen property, which is the crime with which appellant was charged. It is our view that had the legislature intended to exclude receiving stolen property from R.C. 2929.14(D)(1)(e), it would have explicitly done so.
Further, pursuant to R.C. 2929.141(B), the trial court did not impose a three-year or six-year mandatory prison term on appellant to warrant precluding the one-year mandatory prison sentence on the firearm specification. Appellant's fifth assignment of error is without merit.
In his final assignment of error, appellant contends that he was denied his constitutional right to effective assistance of counsel. To warrant a reversal on the grounds that an appellant was not provided with effective assistance of counsel, an appellant bears the burden of meeting the two-prong test set forth in Strickland v. Washington (1984), 466 U.S. 668,687, which states that:
 "[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable."
In order to determine whether an attorney's performance was deficient, the trial court must inquire whether the attorney provided "reasonably effective assistance, considering all of the circumstances." State v.Loza, 71 Ohio St.3d 61, 83, 1994-Ohio-409 and 410, citing Strickland. "A Sixth Amendment violation does not occur `unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.' * * *" State v. Goodwin, 84 Ohio St.3d 331, 334,1999-Ohio-356, quoting State v. Bradley (1989), 42 Ohio St.3d 136, 142. In addition, a properly licensed attorney is presumed to be competent, and thus, judicial scrutiny of his or her performance must be highly deferential. Strickland, 466 U.S. at 689. An attorney's strategic decisions and trial tactics will not support a claim of ineffective assistance. State v. Clayton (1980), 62 Ohio St.2d 45, 48-49.
Under the second prong of the Strickland test, an appellant must show that he or she was prejudiced. To establish prejudice, an appellant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."Bradley, 42 Ohio St.3d at paragraph three of the syllabus; see, also,State v. Stojetz, 84 Ohio St.3d 452, 457, 1999-Ohio-464. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Bays, 87 Ohio St.3d 15, 27, 1999-Ohio-216. See, also, State v. Brant (Aug. 4, 2000), Portage App. No. 99-P-0037, 2000 WL 1114845, at 9.
Appellant claims his trial counsel failed to make an effort to have the trial court examine the constitutionality or appropriateness of the one-year firearm specification. Specifically, he asserts that his trial counsel should have filed a motion to dismiss.
In the case at bar, appellant has not established that his counsel's performance by failing to file a motion to dismiss was deficient. Further, even if his defense counsel's performance was deficient, appellant did not demonstrate that the outcome of the trial would have been different. Appellant also did not prove that he was prejudiced in any way. We conclude that our review of the record does not disclose any conduct that violated appellant's Sixth Amendment right to effective assistance of counsel. Thus, counsel's performance did not fall below the objective standard of reasonableness.
We note that it is more facile to understand the legal definition of "reasonable probability" in this context as defined in Bays, than to maintain such clarity in the application of such test, which is the case with several legal standards. Nevertheless, with respect to the predicate on this issue as contained in the record here, it is difficult for this court to conclude as a matter of law that appellant's trial counsel would have enjoyed a reasonable probability of success in such a constitutional challenge as advanced by his appellate counsel under this assignment before this court. It is our view that appellant advances an imaginative argument on this issue. However, we cannot conclude that this effect manifests a satisfaction of the second prong of the Strickland test. Appellant's sixth assignment of error is overruled.
For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
JUDITH A. CHRISTLEY, J., concurs,
DIANE V. GRENDELL, J., concurs and dissents.
[1] Appellant claimed that on June 23, 1999, when the gun was sold, he was at his girlfriend's residence.